IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| SANDY TIDWELL GILMORE | § | |
| | § | |
| V. | § | ACTION NO. 4:08-CV-285-Y |
| | § | |
| MIKE SYMPSON, ET AL. | § | |

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT

Pending before the Court is Defendants' Motion for Summary Judgment (doc. # 58), filed November 5, 2009. After consideration, the Court GRANTS the motion.

I. BACKGROUND

Plaintiff Sandy Tidwell Gilmore ("Gilmore") was the elected Hood County Tax Assessor-Collector. When Gilmore announced her intention to retire, effective December 31, 2008, two of her employees, Brenda Elrod ("Elrod") and Teresa McCoy ("McCoy"), decided to run for election to the post. (Plf.'s Resp. App. 3.) In June 2007, but before Gilmore announced her retirement, the human-resources director for Hood County told Gilmore that McCoy had tax liens against her property. (Defs.' App. Ex. B at 105-06.) Gilmore, believing that Elrod was more qualified for the position, told Elrod that she supported her for the position and campaigned against McCoy. (Plf.'s Resp. Br. 5; Defs.' App. Ex. A at 19, Ex. B at 79.) On January 7, 2008, McCoy took a leave of absence to focus on the election. (Defs.' App. 2.) In the March 4 election, McCoy and Elrod were forced into a runoff scheduled for April 8.

On March 10, 2008, a reporter for *The Hood County News* received a fax telling her about McCoy's tax lien and resulting levy. (Defs.' App. 19, Ex. A at 23.) The fax purportedly was from a local private investigator and was sent from a local grocery store, but the investigator denies sending the fax to the reporter. (Defs.' App. 18.) Gilmore also denies sending the fax. (Plf.'s

Resp. Br. 16.) The same day the fax was sent to the reporter, Gilmore submitted a written request under the Texas Public Information Act ("TPIA") to the human-resources director asking for financial information about McCoy. The human-resources director, after consulting the county attorney and "other Hood County officials," told Gilmore that such information was confidential and its release could "subject Hood County to liability." (Defs.' App. 2.) The human-resources director returned Gilmore's written request to her.

On March 11, Gilmore attempted to get McCoy's financial information from the treasurer for Hood County, but Defendants claim Gilmore did not fill out a TPIA form when the treasurer told Gilmore she could get the information on her own. (Defs.' App. 2-3, 5, Ex. E at 5-6.) Gilmore asserts that she did fill out a TPIA form on March 11. (Plf.'s Resp. App. 11.) Later that same day, Gilmore gave the reporter a copy of the lien information. (Defs.' App. Ex. A at 23.) Gilmore also gave a copy to a friend so the friend could explain "what [the lien] meant." (Defs.' App. Ex. B at 143-44.) During Elrod's and McCoy's campaign, Gilmore showed McCoy's levy to Elrod, but Elrod told Gilmore that she did not want to use it because Elrod wanted to run "a clean campaign." (Defs.' App. Ex. B at 117.)

On March 14, Gilmore asked the treasurer to return her March 11 TPIA form. When the treasurer could not locate any written request, Defendants assert Gilmore filled out a request form and back-dated it to March 11. (Defs.' App. 20, Ex. G at 10.) Gilmore denies that she back-dated the TPIA form and states that the request referred to by Defendants is her original, March 11 TPIA form. (Plf.'s Resp. App. 11.) It is unclear exactly when or from whom Gilmore first received the levy information, but she alleges she eventually received it from the treasurer and the Hood County clerk.[1] (Am. Compl. 5; Plf.'s Resp. App. 3, 11, 13.) Obviously, Gilmore received it at the latest on

---

[1] Defendants assert that Gilmore never received McCoy's tax information from the clerk or the treasurer.

March 11 when she admittedly distributed it to her friend and the reporter. When the county human-resources director discovered that McCoy's lien information had been released to a newspaper reporter, he asked the reporter to destroy the document. The reporter refused and eventually wrote an article about the lien. (Defs.' App. 2, Ex A at attach. 35.)

On March 17, the commissioners court for Hood County convened in a special session. The agenda provided that the commissioners court would "[c]onvene in Executive Session for Personnel Matters pursuant to Section 551.074(a) (1) to deliberate the appointment, employment, duties, discipline, dismissal or (2) to hear a complaint about an officer or employee regarding Tax Assessor and Collector."[2] (Defs.' App. 8.) Before the hearing, Gilmore requested in writing that the "hearing be held open to the public" because she wanted "the public to know why I am being brought before the Commissioners court and my answers to the court." (Defs.' App. 29.) At the special session but before the court convened in an executive session, Gilmore requested that she be allowed to speak to the court, but her request was denied:

> GILMORE, TAX ASSESSOR COLLECTOR[,] ASKED THAT THE SESSION BE HELD IN OPEN COURT.  COMMISSIONERS AND JUDGE DECIDED TO DELIBERATE AMONG THEMSELVES IN EXECUTIVE SESSION BEFORE ALLOWING THE TAX ASSESSOR COLLECTOR TO SPEAK.  COURT CONVENED AT 2:42 INTO EXECUTIVE SESSION.  (Defs.' App. 9.)

Gilmore states that she was told she would be allowed to speak after the court returned from its closed, executive session. (Plf.'s App. 4.) When the court reconvened the special session, the court stated that it would instigate an investigation:

> RECONVENED INTO OPEN SESSION AT 3:34 P.M.  MOTION MADE BY

---

[2]It is unclear what the impetus for the meeting was because McCoy did not file a complaint about Gilmore's actions regarding her tax lien. (Plf.'s Resp. App. 43.) However, the same day the special session was held, the treasurer sent a letter to the commissioners court stating that she had been told "that there has been an accusation made on our office of disclosing Personnel/Payroll information on an officer/employee of Hood County." (Defs.' App. 5.)

3

> COMMISSIONER SYMPSON TO CONTINUE THE INVESTIGATION THROUGH OUTSIDE MEANS AVAILABLE. BASED ON THE MOTION, WE RECOMMEND ALL CONVERSATION AND DISCUSSION OF THE MATTER CEASE. SECONDED BY COMMISSIONER ROAN. ALL VOTED AYE. MOTION CARRIED. (Defs.' App. 9)

The record does not reflect that Gilmore asked to speak at the reconvened special session or objected to the commissioners court's failure to allow her to speak at that time. Later than same day, commissioner Dick Roan stated at a political function that he did not believe McCoy's tax lien would impede her ability to be bonded as tax assessor. (Plf.'s App. 5.) McCoy stated at the same function that she felt it was her duty to pay her debts. (Plf.'s App. 5.)

On March 19, *The Hood County News* ran a story about McCoy's tax lien. (Plf.'s App. 39.) The next day, Hood County Judge Andy Rash signed a contract with Sage Investigations ("Sage") to investigate the release of McCoy's information and "make recommendations as to criminal violations of the state and federal laws." (Defs.' App. 14, 16.) On March 24, the commissioners court held its regularly scheduled meeting at which Gilmore was allowed to read a statement "regarding the events leading to the request for a special investigator."[3] (Defs.' App. 10-13, Ex. B at 229.) The commissioners decided to "ratify" and "approve" the contract Rash signed with Sage four days earlier. (Defs.' App. 11-12.) The county attorney changed the March 20 contract to remove an indemnification clause and change the mileage rate. (Defs.' App. Ex. H at 62-63.) Sage began its investigation on March 24. (Defs.' App. Ex. H at 62.) On April 8, McCoy won the run-off election and, ultimately, assumed the position of tax assessor collector.

Gilmore filed a TPIA request with the Texas attorney general ("the AG") for the release of

---

[3]The statement does not appear to be part of the summary-judgment record.

information about Hood County's investigation. (Defs.' App. 21.) On May 1, Gilmore[4] filed suit in this Court against Rash and the commissioners in their official capacities and against Sage,[5] raising claims for (1) violations of her rights to free speech, equal protection, and due process and (2) violations of the Texas Open Meetings Act ("TOMA") and Hood County's purchasing policies. Gilmore seeks declaratory and injunctive relief. Plaintiff does not dispute Defendants' assertion that her claims are actually against Hood County. (Defs.' Summ. J. Br. 7.)

On May 19, the AG requested that Sage's investigation materials be excepted from disclosure to Gilmore because they pertained to the AG's own criminal investigation into the matter. (Defs.' App. 22.) Indeed on December 9, 2009, Gilmore was indicted by a Hood County grand jury for misuse of official information. *See* TEX. PENAL CODE ANN. § 39.06(b) (Vernon 2003). Defendants now seek judgment as a matter of law on Gilmore's claims. Gilmore objects to (1) the form of Defendants' summary-judgment appendix and brief, (2) Defendants' failure to plead an affirmative defense, and (3) portions of Defendants' summary-judgment evidence. Defendants object to portions of Gilmore's summary-judgment evidence.

## II. STANDARD OF REVIEW

Summary judgment is appropriate when the record establishes "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

---

[4] Gilmore filed suit "in her official capacity and in her personal capacity." (Am. Compl. 3.) As Defendants point out, Gilmore no longer has the authority to bring claims in an official capacity. (Defs.' Summ. J. Br. 6.) However, Gilmore represents that she merely included her official capacity to emphasize that "a government employee may not enjoy the same breadth of free-speech protections as may an elected official." (Plf.'s Summ. J. Resp. Br. 21.) Thus, this Court will consider her former status as an elected official solely as it affects her free-speech claim.

[5] Gilmore later amended her complaint to delete Sage as a defendant.

FED. R. CIV. P. 56(c).  The party moving for summary judgment has the initial burden of demonstrating that it is entitled to a summary judgment.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The moving party need not produce evidence showing the absence of an issue of fact with respect to an issue on which the nonmovant bears the burden of proof, however.  Rather, the moving party need only point out that the evidentiary documents in the record contain insufficient proof concerning an essential element of the nonmovant's claim.  *See id.* at 323-25.

When the moving party has carried its summary-judgment burden, the nonmovant must go beyond the pleadings and by its own affidavits or by the depositions, answers to interrogatories, or admissions on file set forth specific facts showing that there is a genuine issue for trial.  FED. R. CIV. P. 56(e).  This burden is not satisfied with some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence.  *See Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).  If the evidence is merely colorable or is not significantly probative, summary judgment may be granted.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986).

In making its determination on the motion, the Court must look at the full record in the case. *See* FED. R. CIV. P. 56(c); *Williams v. Adams*, 836 F.2d 958, 961 (5th Cir. 1988).  Nevertheless, Rule 56 "does not impose on the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment."  *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915-16 & n.7 (5th Cir. 1992).  Instead, parties should "identify specific evidence in the record, and . . . articulate the 'precise manner' in which that evidence support[s] their claim."  *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994).

III. DISCUSSION

A. GILMORE'S CLAIMS

    1. Civil-Rights Claims

To hold Defendants liable under § 1983, Gilmore must establish (1) a violation of a right secured by the Constitution or federal law and (2) the deprivation of that right by a person acting under color of state law. *See* 28 U.S.C. § 1983; *Moore v. Willis Indep. Sch. Dist.*, 233 F.3d 871, 874 (5th Cir. 2000).

        a. Free speech

Gilmore argues that her free-speech rights were violated by the commissioners court's action in preventing Gilmore from speaking at the March 17 special session. (Plf.'s Resp. Br. 23-24.) The parties brief this issue in the context of whether the content of Gilmore's proposed statements was on a matter of public concern. (Defs.' Summ. J. Br. 10-12; Plf.'s Resp. Br. 23-25; Defs.' Reply 3-4.) Indeed, the First Amendment does not protect a government employee's job-related speech unless the speech is on a matter of public concern and the employee's interest in expressing herself on the matter is outweighed by any injury the speech could cause to the government employer in promoting the efficiency of its public services. *See Pickering v. Bd. of Educ. of Twp. High Sch. Dist. 205, Will County, Ill.*, 391 U.S. 563, 568 (1968). However, Gilmore was an elected official and, as such, her free-speech rights are analyzed under a strict-scrutiny analysis, which requires any regulation on her speech to be narrowly tailored to address a compelling government interest. *See Jenevein v. Willing*, 493 F.3d 551, 557-58 (5th Cir. 2007). The constitutionality of a regulation on free speech is dependent largely on where that speech is being uttered. *See Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 44 (1983). There are four types of First-Amendment forums occurring on government-owned property: (1) traditional

7

public forum, (2) public forum created by governmental designation, (3) limited public forum, and (4) nonpublic forum. *See Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.*, 473 U.S. 788, 802 (1985).

A limited public forum is one that is open for public expression of a limited type, e.g., by the topic of discussion, the manner of communication, or the class of individuals permitted to speak. *See Chiu v. Plano Indep. Sch. Dist.*, 260 F.3d 330, 346 (5th Cir. 2001)  In such a forum, the government is not required to allow persons to engage in every type of speech. *See Good News Club v. Milford Cent. Sch.*, 533 U.S. 98, 106 (2001).  The government may restrict free expression in a limited public forum if the restriction is not based on viewpoint and it is reasonable in light of the purpose served by the forum.  *See Chiu*, 260 F.3d at 346.  Gilmore concedes that the special session was a limited public forum.  (Plf.'s Resp. 26.)  Here, the commissioners court convened the special session to discuss a "personnel matter."

Under TOMA, every regular, special, or called meeting of a governmental body shall be open to the public.  *See* TEX. GOV'T CODE ANN. § 551.002 (Vernon 2004).  An exception to the open-meeting requirement applies if the governmental body is deliberating a personnel matter.  *See id.* § 551.074(a).  But if a public officer who is the subject of the deliberation requests a public hearing, the exception does not apply.  *See id.* § 551.074(b).  Gilmore requested in writing that the executive session be held publically.  Nevertheless, it is not a violation of TOMA to recess a mandatory open meeting to deliberate in closed session if the officer requesting the open meeting does not timely object to the closed deliberation.  *See United Indep. Sch. Dist. v. Gonzalez*, 911 S.W.2d 118, 127 (Tex. App.—San Antonio 1995, writ denied); *Bowen v. Calallen Indep. Sch. Dist.*, 603 S.W.2d 229, 236 (Tex. Civ. App.—Corpus Christi 1980, writ ref'd n.r.e.).  Here, Gilmore never objected to the commissioners court convening in executive session or to the fact that she was

denied the right to speak during the special session or after the commissioners court reconvened the special session. Thus, any violation of TOMA was waived.

The Court further concludes that the reason the commissioners court decided to accept no further comment on the "personnel matter" when it reconvened was to protect McCoy's privacy and limit Hood County's liability. (Defs.' App. Ex. J at 9, Ex. K at 20.) These rationales to limit public comment in the limited public forum are reasonable in light of the sensitive nature of the session. Thus, it was not unlawful for the commissioners court not to allow Gilmore to speak after it reconvened into special session.

### b. Equal protection and due process

Gilmore further asserts that her equal-protection and due-process rights were violated by refusing to allow her to speak at the March 17 special session. Gilmore concedes that if her free-speech claims fail, her due-process and equal-protection claims are fatally wounded as well. (Plf.'s Resp. 28.) This Court agrees.

### 2. TOMA violations

Under TOMA, Gilmore argues that the March 17 and 24 meetings, including the contract with Sage, must be declared void. As discussed above, TOMA was not violated. Likewise, Hood County's purchasing policies were not violated because the Sage contract was changed and ratified at the March 24 meeting. (Defs.' Summ. J. Br. 21-22; Defs.' Reply 8.) Additionally, the contract with Sage is complete, and Gilmore has been indicted. Thus, there is no justiciable controversy in seeking to void a completed contract, which is fatal to Gilmore's attempt to void the Sage contract. *See Bexar Metro. Water Dist. v. City of Bulverde*, 234 S.W.3d 126, 130-31 (Tex. App.—Austin 2007, no pet.). (Defs.' Summ. J. Br. 20-21; Defs.' Reply 7.)

B. OBJECTIONS

Gilmore objects to Defendants' summary-judgment appendix because Defendants failed to number each page. *See* N.D. TEX. LOC. CIV. R. 56.6(b)(3). Although the lack of page numbers made it extremely difficult for the Court effectively to refer to Defendants' appendix, this is an insufficient reason to strike the entire appendix. Similarly, Gilmore's assertion that Defendants' summary-judgment motion inappropriately contained argument and failed to include a summary, while correctly pointing out violations of a local rule, is insufficient to justify striking the motion. *See id.* 56.3(a)(1), (d). Gilmore's objection to Defendants' alleged failure to plead an affirmative defense is without merit. (Defs. Reply 12.) Gilmore's evidentiary objections to portions of Defendants' summary-judgment evidence are meritless for the reasons stated in Defendants' reply. (Defs.' Reply 12-17.) Finally, Defendants' objections to Gilmore's summary-judgment evidence are overruled as moot. Because this Court is granting Defendants' judgment as a matter of law, there is no need to address these objections.

IV. CONCLUSION

By calling a special session on a "personnel matter" and not allowing Gilmore to speak publically, Defendants did not violate Gilmore's rights to free speech. As a result, her due-process and equal-protection claims fail. Finally, her claims raised under TOMA are without merit because the act was not violated and because the controversy between Gilmore and Defendants is no longer justiciable. All objections to summary-judgment evidence and briefing are OVERRULED.

SIGNED March 24, 2010.

*Terry R. Means*
TERRY R. MEANS
UNITED STATES DISTRICT JUDGE

10